# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

   Appellee,

  v.           No. **CR 05-1644 MCA**

GREGORY S. REDD,

   Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court on Defendant Gregory S. Redd's *Notice of Appeal* [Doc. 2, 3] from the *Judgment & Abstract in a Criminal Case for a Petty Offense* entered by the Honorable Don J. Svet, United States Magistrate Judge, on July 15, 2005. Having reviewed the parties' submissions, the relevant law, and being fully advised in the premises, the Court affirms Defendant's convictions for Aggravated DUI and Improper Lane, as well as his sentence for Aggravated DUI, for the reasons set forth below. The Court vacates Defendant's sentence as to the Improper Lane conviction, and remands for resentencing on that conviction only.

## I. <u>BACKGROUND</u>

Following a bench trial before Judge Svet on April 17, 2005, Defendant was convicted of violating two provisions of the New Mexico Motor Vehicle Code, N.M. Stat. Ann. §§ 66-1-1 to 66-8-141 (Michie 2004), that are incorporated into federal law by means of the

Assimilative Crimes Act (ACA), 18 U.S.C. § 13.  [Tr. 4-17-05, at 38-39.]  Defendant's convictions arose from a traffic stop performed by Airman Henn, a security forces base patrolman stationed at Kirtland Air Force Base, New Mexico.

At trial, Airman Henn testified that he witnessed Defendant's vehicle "break the white traffic lane approximately two times" while "heading westbound on Randolph Avenue on base."  When he reached the intersection of Randolph Avenue and San Mateo Boulevard, Airman Henn observed Defendant's vehicle stop in the middle of the intersection at a flashing yellow, then turn on his turn signal and proceed north on San Mateo.  Shortly thereafter, Airman Henn initiated a traffic stop and Defendant pulled over.  [Tr. 4-17-05, at 4-6.]

Airman Henn testified that when he exited his vehicle and approached Defendant's vehicle, he introduced himself as follows:  "How you doing?  I'm Airman Henn, base police. The reason I pulled you over is I witnessed you break the white traffic line and stop in the middle of the intersection.  Can I see your insurance, registration, driver's license, and military affiliated identification?"  Defendant complied with this request; however, Airman Henn testified that he "witnessed very watery blood shot eyes and there was slurred speech" as well as "a strong odor of an alcoholic beverage emitting from his vehicle and/or person." Airman Henn also observed that Defendant was "in uniform" on the night of the stop.  [Tr. 4-17-05, at 6, 13.]

Believing Defendant was under the influence of alcohol, Airman Henn asked Defendant to turn off his vehicle's engine and turn over the keys to the vehicle.  Defendant

complied with this request.  After another patrolman arrived at the scene, Airman Henn administered a number of field sobriety tests, all of which Defendant was unable or unwilling to perform successfully.  Airman Henn then made the decision to detain Defendant, but waited for an officer to arrive and perform the actual arrest due to the fact that Defendant "was a Lieutenant Colonel in the United States Air Force."  [Tr. 4-17-05, at 6-14.]

Defendant was then taken to the "Law Enforcement Desk" and given a form to fill out regarding his consent to give a breath sample for chemical evaluation by means of a device called an "Intoxilyzer 5000."  After Defendant signed the consent form, the breath test was administered by Sergeant Banovetz, who testified that he is a Law Enforcement Desk Sergeant stationed at Kirtland Air Force Base and certified as a "Breath Alcohol Test Operator."  Sergeant Banovetz explained that the normal procedure for administering the breath alcohol test involves collecting two breath samples from the suspect using the Intoxilyzer 5000.  In this case, however, Sergeant Banovetz testified that Defendant only provided one "good sample" and then refused to cooperate in providing a second sample. [Tr. 4-17-05, at 16-25.]  The first sample indicated a breath alcohol content of .22.  [Ex. 2.]

At trial, Defendant's counsel objected to the introduction of the results of the breath alcohol test based on the absence of a second sample.  Judge Svet overruled this objection on the grounds that it was untimely and that it goes to the weight rather than the admissibility of the evidence.  Judge Svet also found that the absence of the second sample resulted from Defendant's failure to cooperate.  [Tr. 4-17-05, at 22, 27.]

After the Government rested its case, Defendant's counsel moved for a judgment of

acquittal on the grounds that Airman Henn's testimony failed to establish that the intersection where Defendant was pulled over "is located within the State of New Mexico" or that the Airman was wearing a uniform or badge of office and driving a marked police car. Judge Svet denied Defendant's motion, finding that "the Constitution and federal law do not require me to apply state procedur[al] law to this case." Defendant did not present any further evidence or argument at trial. [Tr. 4-17-05, at 36-38.]

On this record, Judge Svet found Defendant guilty of aggravated driving under the influence (Aggravated DUI) in violation of N.M. Stat. Ann. § 66-8-102(D), and using an improper lane (Improper Lane) in violation of N.M. Stat. Ann. § 66-7-317(A), as incorporated into federal law by virtue of the ACA. Judge Svet ordered the preparation of a presentence report, and the matter proceeding to sentencing on July 14, 2005. [Tr. 4-17-05, at 38-39.]

At sentencing, the Government noted that for Aggravated DUI, the mandatory minimum sentence must include DUI school, a $300 fine, 48 hours of jail time, and the use of an interlock device for a period of at least one year as a condition of probation. The Government requested that the Court impose a longer sentence, including "ten days jail time in light of the previous involvement with alcohol." [Tr. 7-14-05, at 4.] Defendant's counsel requested a lesser sentence, citing Defendant's distinguished military record as a fighter pilot, his willingness to undergo treatment, and the adverse impact on his livelihood. [Tr. 7-14-05, at 2-3.] The Probation Office recommended the maximum sentence. [Tr. 7-14-05, at 5.]

At the sentencing hearing, Judge Svet specified separate sentences for each of the two convictions.  For the Improper Lane conviction, he imposed a sentence of five days imprisonment and a $300 fine.  For the Aggravated DUI conviction, he imposed a sentence of another five days imprisonment and a $500 fine.  These sentences run consecutively, resulting in a total of ten days imprisonment.  [Tr. 7-14-05, at 6.]

## II.    ANALYSIS

Judge Svet's jurisdiction to hear this case arose from 18 U.S.C. §§ 636(a)(4) and 3401(a), which authorize United States Magistrate Judges to try and sentence persons charged with petty offenses committed within a judicial district.  See United States v. Zenon-Encarnacion, 387 F.3d 60, 64 (1st Cir. 2004).   Federal law defines a "petty offense" as "a Class B misdemeanor, a Class C misdemeanor, or an infraction, for which the maximum fine is no greater than the amount set forth for such an offense in section 3571(b)(6) or (7) in the case of an individual."  18 U.S.C. § 19.  Class B and C misdemeanors and infractions are defined as involving a term of imprisonment of six months or less, see 18 U.S.C. § 3581(a)(7)-(9), and a maximum fine for an individual of $5,000 or less, see 18 U.S.C. § 3571(b).

The offenses with which Defendant was charged in this case fall within these parameters.  Under the New Mexico Motor Vehicle Code, the penalty for a first aggravated DUI offense is "imprisonment for not more than ninety days or by a fine of not more than five hundred dollars ($500), or both," and "not less than forty-eight consecutive hours in jail."  N.M. Stat. Ann. § 66-8-102(F) (Michie 2004).  The penalty for use of an improper lane

under N.M. Stat. Ann. § 66-7-317(A) is limited to a fine of $10 and a term of probation not to exceed ninety days.  See N.M. Stat. Ann. § 66-8-116 (Michie 2004).

These provisions of the New Mexico Motor Vehicle Code are incorporated into federal law by means of the Assimilative Crimes Act (ACA), 18 U.S.C. § 13.  "The purpose of the ACA is to borrow state law to fill gaps in the federal criminal law that applies on federal enclaves."  United States v. Adams, 140 F.3d 895, 896  (10th Cir.1998).  The ACA thus provides "a method of punishing a crime committed on government reservations in the way and to the extent that it would have been punishable if committed within the surrounding jurisdiction."  Id. (internal quotation omitted).

The jurisdictional reach of the ACA is defined by 18 U.S.C. § 7, under which the special maritime and territorial jurisdiction of the United States includes:

> Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building.

18 U.S.C. § 7.  As applied here, the ACA enables the Government to charge Defendant with violations of New Mexico criminal law for which there is no corresponding federal offense when those violations were committed on federal property located within the State of New Mexico.

Because a United States Magistrate Judge tried and sentenced Defendant for these violations, Defendant has a statutory right to appeal "from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed."  18

U.S.C. § 3402.  Such an appeal does not entitle Defendant "to a trial de novo by a district judge."  Fed. R. Crim. P. 58(g)(2)(D).  Instead, "[t]he scope of appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge."  Id.  Generally speaking, this means that the district court reviews questions of law *de novo* and reviews factual findings for clear error.  See United States v. Sanchez, 258 F. Supp. 2d 650, 657 (S.D. Tex. 2003).

In this appeal, Defendant first contends that the jurisdictional prerequisites for application of the ACA and the state-law offenses were not satisfied because the evidence at trial did not conclusively establish that these offenses occurred on federal property within the State of New Mexico.  This contention lacks merit.  Airman Henn testified that he was stationed at "Kirtland Air Force Base, New Mexico" and that he began observing traffic violations while following Defendant's vehicle "heading westbound on Randolph Avenue on base."  Sergeant Banovetz similarly testified that he is a "Law Enforcement Desk Sergeant" stationed at "Kirtland Air Force Base."  Airman Henn's testimony further specified that the location of the traffic stop was near the intersection of Randolph Avenue and San Mateo Boulevard, after Defendant had turned from westbound Randolph Avenue onto San Mateo Boulevard.  Defendant presented no evidence and conducted no cross-examination that would place this testimony about the location of the incident in dispute.

On this record, it was reasonable for Judge Svet to infer that the offenses in question occurred on Kirtland Air Force Base, an area within the special maritime and territorial jurisdiction of the United States located in the State of New Mexico.  Airman Henn was able

to identify a specific location on the base where the conduct at issue occurred, and it is common knowledge ascertainable from any number of published street maps that this location is within the boundaries of Kirtland Air Force Base and the State of New Mexico. See United States v. Hughes, 542 F.2d 246, 248 n. 1 (5th Cir.1976) (stating that offense occurred on a federal enclave and thus the court had jurisdiction because "[t]he record is replete with evidence of exactly where on Fort Rucker the offense occurred and the district court could have taken judicial notice of the fact that certain named streets and intersections are located on the federal enclave"); United States v. Bello, 194 F.3d 18, 26 (1st Cir. 1999) (collecting cases where courts took judicial notice of similar facts).

Defendant next contends that the Government failed to prove all the essential elements of a violation of New Mexico law because the evidence at trial did not establish that the patrolmen performing the search and seizure of Defendant's vehicle and person followed the procedure specified in the New Mexico Motor Vehicle Code with respect to appearing in uniform, see N.M. Stat. Ann. § 66-8-124, and using a uniform traffic citation issued by the "motor vehicle department" that identified the vehicle Defendant was driving, see N.M. Stat. Ann. § 66-8-128.  These contentions also lack merit.

The ACA incorporates the substantive offenses and penalties of state law, but not the type of state procedural requirements cited by Defendant.  Thus, when charges are brought in federal courts pursuant to the ACA, "'federal courts are not required to follow specific provisions of state law which go beyond establishing the  elements of an offense and the range of punishment.'"  United States v. Cox, 929 F.2d 1511, 1513-14 (10th Cir. 1991)

(quoting <u>United States v. Sain</u>, 795 F.2d 888, 890 (10th Cir.1986)).  Further, the New Mexico Motor Vehicle Code states that the procedure prescribed therein "is not exclusive of any other method prescribed by law for the arrest and prosecution of a person violating these laws," N.M. Stat. Ann. § 66-8-127, and the uniform traffic citation is only required for "state and local agencies," <u>id.</u> § 66-8-130.

Under federal law, "a police officer may effect an arrest if the officer 'has probable cause to believe that an individual has committed even a very minor criminal offense in his presence.'" <u>Apodaca v. City of Albuquerque</u>, No. 05-2008, 2006 WL 92537, at n.2 (10th Cir. Apr. 11, 2006) (quoting <u>Atwater v. City of Lago Vista</u>, 532 U.S. 318, 354 (2001)).  Thus, whether the base patrolmen followed state procedural requirements in making the arrest is not relevant here.  <u>See</u> <u>id.</u>

The same principle applies to Defendant's challenge to the sufficiency of the evidence supporting his conviction for Aggravated DUI.  Under state law, this offense may be proven in at least two ways:  (1) showing that the driver of a vehicle "has an alcohol concentration of sixteen one hundredths or more in his blood or breath," or (2) showing that the driver of a vehicle "refused to submit to chemical testing" and, "in the judgment of the court, based upon evidence of intoxication presented to the court, was under the influence of intoxicating liquor or drugs."  N.M. Stat. § 66-8-102(D).

At trial, the Government presented evidence that the first breath sample collected from Defendant showed an alcohol concentration of .22, which is well above the .16 concentration required for an Aggravated DUI conviction.  Defendant's counsel objected to the admission

of this evidence based on the absence of a second breath sample.  The state-law requirement for a second breath sample, however, does not apply to charges brought in federal court pursuant to the ACA.  See United States v. Brannon, 146 F.3d 1194, 1196 (9th Cir. 1998).

Moreover, any error in admitting the result of the first breath sample was harmless because even without this evidence, Judge Svet could find Defendant guilty of Aggravated DUI under the alternative theory that Defendant was intoxicated and "refused to submit to chemical testing."  N.M. Stat. Ann. § 66-8-102(D)(3).  The Government presented other evidence of Defendant's intoxication (such as failure to successfully perform field-sobriety tests, slurred speech, and the odor of alcohol) that did not depend on the breath-test results. See United States v. Kawa, 25 F.3d 1059, 1994 WL 164597, at *2 (10th Cir. 1994) (unpublished order and judgment reasoning that any error in admission of result of chemical testing was harmless when there was other evidence of intoxication).  The Government also presented evidence supporting a reasonable inference that Defendant's failure to provide a second breath sample amounted to an unjustified, willful refusal.

In this context, the New Mexico Court of Appeals has specifically held that the words "submit to chemical testing" mean to "provide two breath samples."  State v. Vaughn, 2005-NMCA-076, ¶ 41, 137 N.M. 674, 114 P.3d 354.  Accordingly, "those who, without reasonable justification, provide [only] one sample have failed to take the test 'as provided for in the Implied Consent Act.'"  Id. (quoting N.M. Stat. Ann. § 66-8-102(D)(3)).  It follows from the above analysis that Defendant's convictions for Aggravated DUI and Improper Lane must be affirmed.

I reach a different conclusion with respect to the sentence Defendant received for the Improper Lane conviction. On appeal, the Government correctly concedes that Defendant's sentence of five days imprisonment and a $300 fine for the Improper Lane conviction was reversible error, because the ACA incorporates the range of punishment contained in state law, and the New Mexico Motor Vehicle Code provides that the maximum penalty for this offense is a $10 fine and 90 days probation. See N.M. Stat. Ann. §§ 66-7-317, 66-8-116. The Tenth Circuit "regularly has found reversible error when the sentence imposed by the district court exceeded the statutory maximum penalty applicable to the offense of conviction." United States v. Jones, 235 F.3d 1231, 1238 (10th Cir. 2000).

The parties identify no error in the sentencing for Defendant's Aggravated DUI conviction. Accordingly, while Defendant's sentence for the Improper Lane conviction must be vacated, his sentence for Aggravated DUI is affirmed. The Court remands the matter to Judge Svet for resentencing on the Improper Lane conviction only.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant's sentence for the Improper Lane conviction is **VACATED,** and this matter is **REMANDED** for resentencing on that conviction only in accordance with this *Memorandum Opinion and Order*. In all other respects, Defendant's convictions and his sentence for Aggravated DUI are **AFFIRMED**.

**SO ORDERED** this 12th day of May, 2006, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
UNITED STATES DISTRICT JUDGE